**David R. Newton v. Department of Employment Security**

[409 A.2d 594]

No. 327-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed November 20, 1979

*Alan S. Rome* and *Michael R. Zimmerman,* Vermont State Employees' Association, Inc., Montpelier, for Plaintiff.

*Brooke Pearson,* Montpelier, for Defendant.

**Barney, C.J.** The plaintiff was discharged on May 19, 1978, from his position as an Income Maintenance Supervisor in the Vermont Department of Social Welfare. He filed a claim for unemployment compensation. He was disqualified for benefits until he had earned wages in excess of six times his weekly benefit amount on the ground that he was discharged from his employment for gross misconduct connected with his work under 21 V.S.A. § 1344(a)(2)(B). This decision was confirmed at all levels of the Department of Employment Security, including the Board itself.

The plaintiff had been employed by the Department of Social Welfare for the last five years. He is a college graduate and had moved from a general assistance work up to his supervisor position. He was characterized as having an excellent knowledge of Welfare General Assistance regulations. His last position involved responsibility for supervision and training of two General Assistance workers and three workers dealing with Medicaid and Food Stamps.

In December, 1976, the plaintiff sought welfare help from his own department in the form of a fuel vendor payment. His eligibility required, among other things, that he have exhausted his resources, and he duly certified that he had exhausted all available income resources. In fact, he did have about $12.00 in a credit union account. It was his view that that amount was not readily convertible to cash within 24 hours, he being in Bennington and the deposit in Montpelier. Therefore, he believed he was not required to report it.

In January, 1978, the plaintiff applied for Food Stamps for his family. At the time of the application his wife, a nurse, was on maternity leave which was extended by the serious illness of their infant daughter. His application advised that he expected his wife to return to work the later part of February. A Department of Social Welfare regulation required that the department be notified of any changes in the status of an applicant within ten days of the date on which it becomes known that such a change will take place.

The plaintiff's wife in fact returned to work on January 19, 1978. The plaintiff claimed to have timely notified the appropriate person that his wife had returned to work, but the evidence developed that that person was out of the office and on vacation at the time notice was claimed to have been given. It was her testimony that she was never notified, but found out that the plaintiff's wife had returned only by overhearing reference to it in a conversation. As a result the plaintiff received Food Stamps in February and March in excess of his entitlement. This episode culminated in the plaintiff's discharge from the Department of Social Welfare.

The Board, in evaluating the evidence, rejected the plaintiff's claim of notice. This, of course, is their function as finders of fact. *Frost* v. *Department of Employment Security*, 135 Vt. 39, 40, 370 A.2d 203, 204 (1977). The evidence was in conflict, and the resolution of that conflict was for them.

The Board went on to conclude that this conduct measured up to the standard of "gross misconduct" that called for the imposition of extended disqualification. The Board reasoned that the plaintiff knew full well of his duty as a welfare applicant to make full disclosure of his financial status and other personal circumstances. It concluded that the knowing failure of the plaintiff to give notice of his wife's return to work represented a maladministration on the part of a welfare administrator for his own benefit and was a substantial disregard of his employer's interest. As a result of his breach of trust he received benefits to which he was not entitled. This, said the Board, constituted gross misconduct.

The plaintiff argues that this record may show an error in judgment, but does not illustrate misconduct, to say nothing of gross misconduct. He says, quite rightly, that conduct

legitimately justifying discharge need not rise to the level of any sort of misconduct for purposes of disqualification for unemployment benefits. *Kuhn* v. *Department of Employment Security*, 134 Vt. 292, 294, 357 A.2d 534, 535 (1976). It is his claim that there are no findings supporting the conclusions of the Board relating to this alleged breach of trust.

Although the plaintiff's legal distinction between discharge and disqualification is sound in law, his factual contentions are not. The Board set out in its findings acts of the plaintiff, supported by evidence, that sufficiently undergird the gross misconduct conclusions. We cannot disagree with the Board when it determines that an employee is guilty of gross misconduct because he committed, for his own benefit, the very kind of fraud his employment gave him the duty to prevent on the part of others. The result reached by the Board was sound in law and supported by the findings and evidence.

*Judgment affirmed.*